UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GERALD JUNIOR DUKES,

       Plaintiff,                        CIVIL ACTION NO. 09-14986

      v.                                 DISTRICT JUDGE ARTHUR J. TARNOW

COMMISSIONER OF                 MAGISTRATE JUDGE VIRGINIA M. MORGAN
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION
TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (D/E #7)
AND GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (D/E #10)**

**I. Introduction**

      This Social Security case comes before the court on the parties' cross-motions for summary judgment (D/E #7, #10). For the reasons stated below, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that plaintiff's motion for summary judgment be **DENIED**, and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

**II. Background**

      In November 2006, plaintiff filed an application for Supplemental Security Income (SSI), alleging that he was disabled due to pain and carpal tunnel in his right hand and arm, with a

disability onset date of March 30, 2006. (Tr. 105-107, 121-122, 135-136) Plaintiff completed school through grade eleven and, while he has worked as a landscaper and busboy in the past, he has no past relevant work for purposes of a SSI disability determination. (Tr. 28, 136-140, 143-150)

The Social Security Administration (SSA) denied plaintiff's application on January 30, 2007. (Tr. 59-62) Plaintiff then requested a hearing before an administrative law judge (ALJ). (Tr. 63) A video hearing was held on May 20, 2009 before ALJ Troy Patterson. (Tr. 38-56) Plaintiff, represented by counsel, appeared and testified at the hearing. The ALJ also took testimony from a vocational expert (VE).

On July 15, 2009, the ALJ issued a decision denying plaintiff's claim. (Tr. 16-29) In that decision, the ALJ first determined that plaintiff had the following severe impairments: "right upper extremity impairment; degenerative joint disease of right knee; arthritis of the right knee; diabetes mellitus; and carpal tunnel syndrome." (Tr. 21) The ALJ also determined that, while plaintiff's impairments were "severe" withing the meaning of 20 C.F.R. § 416.920(a)(4)(ii), plaintiff did not have an impairment that met or equaled any of the impairments listed in Appendix 1, Subpart P of the Social Security regulations. (Tr. 23) The ALJ further determined that plaintiff has the residual functional capacity (RFC) to "perform light work as defined in 20 CFR 416.967(b)[1] except that he cannot perform any overhead work with his right upper

---

[1]20 C.F.R. § 416.967(b) provides: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must

extremity; and he can only use right upper extremity for occasional grasping, fingering and handling." (Tr. 23)

Taking into account plaintiff's age, education, work experience, and residual functional capacity, as well as the hearing testimony of the VE, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that plaintiff can perform. (Tr. 28-29) Accordingly, the ALJ found that plaintiff was not "disabled" within the meaning of the Social Security Act. (Tr. 29) Plaintiff was 49 years-old at the time of the ALJ's decision. (Tr. 27)

On July 26, 2009, plaintiff filed a request for review of the ALJ's decision with the SSA's Appeals Council. (Tr. 11-13) The Council denied the request on October 20, 2009. (Tr. 1-3) The ALJ's decision thus became the final determination of the Commissioner. See 20 C.F.R. § 416.981.

On December 23, 2009, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g). As noted above, the matter comes before the court on the parties' cross-motions for summary judgment. Plaintiff contends that the ALJ erred in handling plaintiff's severe psychiatric impairment and in finding that plaintiff was capable of working in the specific jobs identified by the VE. The Commissioner contends that the disability determination is supported by substantial evidence and should thus be affirmed.

### III. Legal Standards

---

have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

**A. Disability Evaluation**

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). See also 42 U.S.C. § 423(d)(1)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). See also 42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that he is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate SSI claims. 20 C.F.R. § 416.920. In Foster, 279 F.3d at 354 (citations omitted), the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in substantial gainful activity. Next the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity

must be considered to determine if other work can be performed.
The burden shifts to the Commissioner at this fifth step to establish
the claimant's ability to do other work.

**B.  Standard of Review**

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of
> Social Security made after a hearing to which he was a party,
> irrespective of the amount in controversy, may obtain a review of
> such decision by a civil action commenced within sixty days after
> the mailing to him of notice of such decision or within such further
> time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997).  The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." "[The] decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ."  Key, 109 F.3d at 273.

**IV. Analysis**

   **A. Mental Impairment**

Plaintiff first argues that the ALJ erred during the discussion of plaintiff's severe psychiatric impairment. The ALJ discussed plaintiff's alleged mental impairment in the section of the decision involving plaintiff's severe impairments. (Tr. 21-23) In that section, the ALJ specifically wrote:

> The claimant also alleged disability due to depression. He reported that this condition resulted in suicidal ideation, feeling of worthlessness, and lack of focus and attention. The claimant also noted that he initially became depressed because he was homeless, could not maintain employment, and felt as if he had no place to go.
>
> He testified that he was treated for suicidal ideation in November 2008 and that a therapist at Catholic Charities was able to help him through therapy. The claimant also reported that he started receiving bi-weekly therapy in February 2009. He denied taking any psychotropic medications, but noted that his therapist recommended that he see a psychiatrist to receive a prescription.
>
> The claimant also testified that he was in special education. Educational records were submitted into the file. His records from 1976 and 1977 reveal mostly passing, but low, grades. (Exhibit B10F, pp.1-4) He also testified that he attempted to complete a GED program, but dropped out because he felt uncomfortable around younger students. The records from Mott Adult High School showed varied levels of achievement. (Exhibit B11F, pp.1-3)
>
> There is little evidence in the record supporting the claimant's allegations. In December 2006 he reported that he is not social, that he is often angry due to pain, and that he often heard voices. (Exhibits B8E, pp.6-7) The March 2009 medical records show that he was taking Seroquel, a psychotropic medication. (Exhibit B9F, p1) There are no other medical records relating to a mental

impairment or any effect of a possible mental impairment on the claimant.

Moreover, the record does not include any diagnoses of a mental impairment from medically acceptable source. In order for an impairment to be considered severe, there must be evidence from an "acceptable medical source" in order to establish the existence of a medically determinable impairment that can reasonably be expected to produce the symptoms (20 CFR 416.13 (a) and SSP 06-03p). A medically determined impairment may not be established solely on the basis of a claimant's allegations regarding symptoms (20 CFR 416.908, 20 CFR 416.929, and SSP 96-4p). Thus, the Administrative Law Judge finds the claimant's alleged depression not severe.

In making the findings, the undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404 Subpart P, Appendix 1). These four broad areas are known as the "paragraph B" criteria.

In activities of daily living, the claimant had mild restriction. He reported that he is independent in his personal care and that he does not need help with any daily activities. (Exhibits B8E, p.2 and B8F, p.6) Moreover, he testified that he can lift at least fifty pounds with his non-dominant arm, that he sometimes goes outside to walk, and that he watches television.

In social functioning, the claimant had mild difficulties. He reported that he has difficulty getting along with others. (Exhibit B8E, p.6) However, the claimant testified that he goes to church every Sunday, that a friend often drives him to church or therapy, and that he has a girlfriend whom he sees on a daily basis.

With regard to concentration, persistence or pace, the claimant has mild difficulties. He testified that former employers complained about his ability to maintain an acceptable pace. The claimant also alleged a lack of focus and attention. However, he testified that he can watch television and that he goes to church every Sunday. Moreover, the medical records indicate that the claimant continued to be employed during at least part of the period at issue in this

> case. (Exhibit B6F, pp.2-9)
>
> As for episodes of decomposition, the claimant has experienced no episodes of decomposition, which have been of extended duration.
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decomposition, each of extended duration, the "paragraph B" criteria are not satisfied.
>
> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. She [sic] does not meet the C criteria for listing 12.04. The claimant has had no episodes of decompensation. Additionally, there is no evidence that a minor changed in environment is predicted to cause an episode of decompensation and the claimant is able to function outside a highly supportive living arrangement.
>
> The limitations identified in the "paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listing in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

[Tr. 21-23] The ALJ also noted that a state agency consultant, Dr. DeShawn McGhee stated in his report that "there was no evidence of treatment for a mental impairment available in the record." (Tr. 27 (citing Tr. 236)). Moreover, the ALJ gave Dr. McGhee's opinion great weight as it was consistent with the record as a whole. (Tr. 27)

In response to that discussion, plaintiff argues in his motion for summary judgment that the ALJ erred in not finding that he had a mental impairment. Specifically, plaintiff asserts that the ALJ's reliance on Dr. McGhee's opinion is misplaced as Dr. McGhee authored his opinion and conclusion in January 2007, which was two years prior to plaintiff seeking treatment for his severe mental condition and taking psychotropic medication for his severe mental condition. (Tr. 236) Plaintiff also argues that, because the ALJ found that plaintiff's diabetes mellitus was a severe impairment despite the lack of evidence regarding that condition, the ALJ should also find that plaintiff had a severe mental impairment even though there is a lack of evidence in support of that impairment.

Whatever the reasons the ALJ found plaintiff had a severe impairment of diabetes mellitus[2], the ALJ's decision to find that plaintiff did not have a severe mental impairment was clearly supported by substantial evidence. As noted by the ALJ, other than a single medical record referencing a prescription for Seroquel, there were no medical records relating to a mental impairment. (Tr. 22) Moreover, while plaintiff was prescribed Seroquel in March of 2009 and that medication is used to treat various mental disorders (Tr. 237), plaintiff was not using Seroquel or any other medication two months later, despite having regular access to a therapist (Tr. 49-50, 53). With respect to that therapist, plaintiff testified that he was being treated by a therapist twice per week for depression and past suicidal thoughts. (Tr. 49-50) However, the ALJ correctly noted that plaintiff was successfully treated for his suicidal thoughts in therapy in

---

[2]As noted by the ALJ, plaintiff's treatment with insulin is documented in the record, and, at the May 2009 hearing, plaintiff testified to taking diabetes medication. (Tr. 24, 46, 237).

November 2008 (Tr. 21) and that there are no mental health treatment notes (Tr. 22). Additionally, the ALJ properly relied on Dr. McGhee's finding that no functional limitations resulted from a mental impairment. (Tr. 27) While plaintiff notes that Dr. McGhee formed his opinion in January of 2007, before plaintiff's suicidal thoughts and prescription for Seroquel, plaintiff has not identified any medical evidence in the record subsequent to Dr. McGhee's opinion that would contradict Dr. McGhee's assessment that plaintiff was not limited by a mental health condition. A severe impairment is one that significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 416.920. Here, for the reasons discussed above, the ALJ's decision finding that plaintiff did not suffer from any severe mental impairment is supported by substantial evidence.

Plaintiff also argues that the ALJ should have sent plaintiff for a consultative examination in order to further develop the evidence regarding his severe mental impairment given the evidence that plaintiff was taking Seroquel, plaintiff's testimony regarding mental health treatment, and plaintiff's testimony as to his thoughts of suicide. However, as noted by the Commissioner, a referral for a consultative examination is only required where there is insufficient evidence to make a disability determination. 20 C.F.R. § 416.927(c)(3).[3] In this case, there was sufficient evidence for the ALJ to make a detailed and thorough analysis of

---

[3] 20 C.F.R. § 416.927(c)(3) provides: "If the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled, or, if after weighing the evidence we decide we cannot reach a conclusion about whether you are disabled, we will try to obtain additional evidence . . . . We will request additional existing records, recontact your treating sources or any other examining sources, ask you to undergo a consultative examination at our expense, or ask you or others for more information. We will consider any additional evidence we receive together with the evidence we already have."

plaintiff's allegations regarding depression and, while that evidence fails to demonstrate the existence of a severe impairment, there was no need for a consultative examination.

### B. ALJ's Use of VE's Testimony

Plaintiff also argues that the ALJ erred in relying on the VE's testimony and finding that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (Tr. 28-29) During the hearing before the ALJ, the following exchange occurred between the ALJ and the VE:

> ALJ: Well, now let me ask the vocational witness some questions at this time. Ms. Tremblay, in this case, Mr. Dukes doesn't have any past relevant work. Would you assume an individual of the same age, education and work experience as our claimant today and assume that this individual can perform work from the light exertional level I think with the following sections. He cannot perform any work overhead with his right upper extremity for occasional grasping, fingering and handling. Are there any jobs such an individual could perform that exist in the economy?
>
> VE: Yes, there would be. In the light, unskilled category, examples, a counter attendant. Numbers are approximately 231,000. DOT number is 311.477-014. You said occasional handling, too, correct?
>
> ALJ: Yes.
>
> VE: Okay; counter clerk and this is retail, 177,000, 295.357-018; and information clerk, 89,000, 230.663-010.
>
> ALJ: Okay, thank you. Is your testimony today consistent with the provisions of the <u>Dictionary of Occupational Titles</u>?
>
> VE: Yes.

[Tr. 54]

Where an ALJ poses a hypothetical question to a VE that fully and accurately incorporates a claimant's physical and mental limitations, and the VE testifies that a person with such limitations is capable of performing a significant number of jobs in the national economy, such testimony is sufficient to support a finding that the claimant is not disabled. Smith v. Halter, 307 F.3d 377, 378 (6th Cir. 2001); Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987). Here, plaintiff does not challenge the accuracy of the hypothetical and, consequently, the VE's testimony is sufficient to support the ALJ's decision.

Additionally, while plaintiff suggests some conflict between the VE's testimony and the Dictionary of Occupational Titles (DOT), the VE specifically testified that there was no such conflict (Tr. 54) and there is no evidence of any such conflict. This court would also note that the DOT itself contains a special notice which provides that occupational information contained therein merely reflects jobs as they generally have been found to occur and warns that the descriptions may not coincide in every respect with the content of jobs as performed in particular industries, establishments, or locations. Matelski v. Commissioner of Social Sec., No. 97-3366, 1998 WL 381361, *6 (6th Cir. June 25, 1998) (citing DOT at xiii). Similarly, this court would also note that the DOT contains information about most, but not all, occupations and the DOT's job classifications are collective descriptions of occupations that can encompass numerous jobs. Lindsley v. Commissioner of Social Sec., 560 F.3d 601, 605 (6th Cir. 2009) (citations omitted).

In any event, despite the arguments in plaintiff's motion challenging the vocational expert's testimony, plaintiff's attorney did not bring to the attention of the ALJ the alleged

conflict between the oral testimony and the job descriptions in the DOT and, as the Sixth Circuit has held in unpublished cases, nothing in the applicable Social Security regulations requires the administrative law judge to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge. See Ledford v. Astrue, 311 Fed. Appx. 746, 757 (6th Cir. 2008); Martin v. Commissioner of Social Security, 170 Fed. Appx. 369, 374-75 (6th Cir. 2006). Moreover, the implication from plaintiff's argument is that the ALJ and Commissioner are bound by the Dictionary's characterization of occupations and that implication is incorrect. In Conn v. Secretary of Health & Human Services, 51 F.3d 607 (6th Cir.1995), the Sixth Circuit held that the ALJ and consulting vocational experts are not bound by the DOT in making disability determinations because the Social Security regulations do not obligate them to rely on the DOT's classifications. Conn, 51 F.3d at 610 (citing 20 C.F.R. § 404.1566(d)). See also Wright v. Massanari, 321 F.3d 611, 616 (6th Cir. 2003) (holding that the occupational descriptions in the DOT do not necessarily trump the testimony of a vocational expert); Barker v. Shalala, 40 F.3d 789, 795 (6th Cir. 1994) (rejecting the plaintiff's argument that "only the Dictionary of Occupational Titles can be used as a basis for defining the characteristics of jobs occurring in the national economy" because "[i]t would be manifestly inappropriate to make the Dictionary of Occupational Titles the sole source of evidence concerning gainful employment.").

Therefore, plaintiff's argument regarding the ALJ's use of the VE's testimony should also be rejected as the ALJ properly relied the VE's testimony after posing an accurate

hypothetical question. Additionally, the VE specifically testified that there is no conflict between his testimony and the DOT, and plaintiff provided no evidence that he cannot perform the jobs identified by the VE. Lastly, plaintiff's attorney failed to raise the issue of any conflict before the ALJ and that the ALJ is not required to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy.

## V. Conclusion

For the reasons stated above, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that plaintiff's motion for summary judgment be **DENIED**, and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                        S/Virginia M. Morgan
                        Virginia M. Morgan
                        United States Magistrate Judge

Dated: September 9, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on September 2, 2010.

                        s/Jane Johnson
                        Case Manager to
                        Magistrate Judge Virginia M. Morgan